#28742-a-MES
**2020 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DEONDRE DAVIS WILSON,                     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.


MARK KADI of
Minnehaha County Office
  of the Public Advocate
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 26, 2019
OPINION FILED **07/15/20**

#28742

SALTER, Justice

[¶1.]     A jury found Deondre Wilson guilty of aggravated assault (domestic), simple assault (domestic), interference with emergency communications, and disorderly conduct.  He appeals, claiming the existence of plain error through the admission of certain evidence and the prosecutor's closing argument.  Wilson directs an additional challenge to his assault convictions, arguing that their domestic designation reflects an essential element that was not proven at trial.  Finally, Wilson contends the court utilized an improper procedure for a stipulated post-judgment sentence correction.  We affirm and remand with instructions to remove the domestic designation from the aggravated and simple assault convictions and the accompanying obligation to pay two $25 statutory domestic violence fees.

## Background

[¶2.]     In March 2014, Wilson was living with his girlfriend, Shannon Ihnen, at a Sioux Falls apartment she shared with her father, Steve Ihnen.  Wilson was 37 years old at the time, and Steve was 58.  The two had a tepid relationship.  Wilson and Shannon share a young daughter who also lived in the apartment.

[¶3.]     On the evening of March 30, Shannon returned from a trip and found Wilson drunk.  An argument ensued, and Shannon asked Wilson to move out.  She called a cab to pick him up and accompanied him outside to meet the cab, where they encountered Steve sitting in his car.

[¶4.] Wilson and Steve engaged in a verbal confrontation during which Steve called Wilson "boy." Wilson viewed the comment as a racial insult[1] and used an open hand to strike Steve, who then dialed 911. While Steve was on the phone with the 911 operator, Wilson knocked the telephone from Steve's hand and ended the call. The altercation escalated quickly and unevenly. Eyewitness neighbors described how the bigger and younger Wilson took Steve to the ground and beat him with closed fists. Steve was unable to resist or defend himself, and witnesses worried he would be seriously injured or killed.

[¶5.] When the first of several police officers arrived, Wilson walked toward him with his hands in the air. As he approached the officer, Wilson turned around with his hands behind his back as if he was about to be arrested and placed in handcuffs. Officers did not initially arrest Wilson, but they did after conducting an on-scene investigation. Police videos from the evening show an agitated Wilson loudly and repeatedly declaring that his actions were in self-defense. He claimed he was going to "take it to trial," and accused Steve of being a racist. His protests continued unsolicited throughout his arrest and during the drive to the police station.

[¶6.] Steve refused an ambulance, but later allowed a family member to take him to a local hospital emergency department. A computerized tomography (CT) scan[2] of Steve's head showed no injuries, and he was released in the early

---

1. Steve is white, and Wilson is black.

2. A CT scan is a form of medical imaging used to produce detailed views of a scanned area of the body.

morning hours of March 31. Photos of Steve taken at the scene and three days later during a meeting at the sheriff's office depict facial bleeding and swelling, a slanted tooth, and scratches on his neck. Steve testified that he had injured his neck in an auto accident several years earlier and now experienced trouble moving his neck after the assault. Steve missed three days of work and sought additional medical care to receive an injection for pain relief. He testified that his dental injuries will require future work to remove teeth and fit dentures, which Steve also attributed to his age. Shannon claimed to have sustained scratches to her arm during the altercation with Wilson.

[¶7.] The State initially charged Wilson with several misdemeanor offenses, including four counts of simple assault (domestic) naming Steve as the victim, four counts of simple assault (domestic) that named Shannon as the victim, one count of disorderly conduct, and one count of interference with emergency communications. Over eight months after the initial charges, the State sought and obtained an indictment that included the original charges as well as an additional charge of aggravated assault (domestic) involving Steve, which is a class three felony.[3]

[¶8.] Wilson's legal representation through the Minnehaha County Public Defender's Office was reassigned three times before trial. The court reset the case with each reassignment. The first reassignment occurred due to disagreements between Wilson and his counsel. The second reassignment occurred when his attorney left the office for another job. Wilson's third lawyer from the Public

---

3. The State also filed a part II information, alleging Wilson is a habitual offender based upon a third-offense driving under the influence conviction, which Wilson admitted at sentencing.

Defender's Office was assigned approximately one month before trial. None of

Wilson's attorneys filed any substantive pretrial motions or motions in limine.

[¶9.] During the trial, the jury heard testimony from Steve, Shannon, the cab driver, three neighbor witnesses, and three law enforcement officers who responded to the incident. The evidence also included three video and audio recordings from the officers' in-car video cameras and body microphones in addition to three audio-taped recordings of 911 calls relating to the incident.[4] The recorded evidence from the scene included several of Wilson's statements claiming self-defense, as well as the statements of several witnesses who briefly described how Wilson had beaten Steve. The same witnesses later testified at trial. Wilson did not object to the admission of any of this evidence.

[¶10.] Despite his emphatic statements during his arrest, Wilson did not pursue a justification defense at trial and did not testify. Instead, in closing arguments, his attorney conceded that Wilson had assaulted Steve and focused on limiting criminal liability to the simple assault theory and avoiding a conviction for aggravated assault.

[¶11.] During the State's rebuttal closing argument, the prosecutor discussed the extent of Steve's injuries and commented on his need for additional dental work by stating, "I don't know about you, but having a piece of my body taken out and having a fake part put back, is kind of a big deal to me." The prosecutor also explained the "lingering additional charge" of aggravated assault by contrasting law

---

4. The 911 recordings included calls from Steve, the cab driver, and a neighbor.

enforcement's "real-time" charging decisions with what was described as the more deliberative process used by the State's Attorney's Office to "look[] at all of the reports, review[] all the videos, [and] look[] at all of the photographs [to determine] what the defendant should be charged with." Wilson did not object to any of these statements.

[¶12.] The circuit court instructed the jury that an assault between members of the same household would support a domestic designation, but the instruction was based upon a previous version of SDCL 25-10-1. The statute was amended during the pendency of this case to eliminate the domestic designation for members of the same household.

[¶13.] The jury found Wilson guilty of aggravated assault (domestic), four counts of simple assault (domestic) involving Steve,[5] interference with emergency communications, and disorderly conduct. On July 20, 2015, the circuit court sentenced Wilson to 15 years in the penitentiary with 10 years suspended on the aggravated assault conviction. The court also sentenced Wilson to a total of 200 days in county jail for his misdemeanor convictions.

[¶14.] The circuit court initially ordered Wilson's penitentiary and jail sentences to run concurrently, but after sentencing, the parties and the court agreed the confinement sentences should not run concurrently.[6] To address this

---

5. The jury found Wilson not guilty on all counts of simple assault against Shannon.

6. The parties and the court relied upon *State v. Wooley*, 461 N.W.2d 117, 120-21 (S.D. 1990), which held that a court imposing sentences on multiple counts cannot require concurrent terms of confinement in jail and prison.

issue, the judge met with counsel on August 25, 2015, and issued an order modifying Wilson's sentence by suspending all his jail time for the misdemeanor charges. Wilson was not present at the August 25 meeting, and it was not recorded electronically or stenographically by a court reporter.

[¶15.]     Wilson did not appeal within 30 days of the court's judgment and sentence, and his convictions became final. *See* SDCL 23A-32-15. On September 8, 2017—roughly two years later—Wilson filed a habeas corpus petition alleging ineffective assistance of counsel, which included the claims that his trial counsel failed to perfect his direct appeal and that his attorney should have sought to suppress the statements he made during his arrest. After a hearing that included testimony from Wilson's trial counsel, the habeas court[7] granted relief by reentering the judgment and sentence on September 11, 2018, allowing Wilson to file a timely direct appeal.[8] The habeas court denied relief on other issues presented in the habeas petition, purportedly without prejudice.

[¶16.]     Wilson raises several issues on appeal, which we restate as follows:

1. Whether the circuit court committed plain error when it allowed allegedly inadmissible evidence at trial.

2. Whether the circuit court committed plain error by not intervening during the State's closing arguments.

---

7. The Honorable Lawrence E. Long, Circuit Court Judge, retired.

8. The habeas court did not find that Wilson's attorney had been deficient for failing to appeal, but rather seemed to base its decision upon a finding that the clerk of courts erroneously responded to Wilson's post-sentencing inquiry about the date on which the judgment of conviction was filed. Since it is not presented in this appeal, we express no opinion as to whether such a basis would merit habeas relief or reinstatement of appellate rights under SDCL 23A-27-51.

3. Whether the circuit court committed plain error when it allowed statements Wilson made during his arrest.

4. Whether the circuit court erred when it denied Wilson's motion for judgment of acquittal.

5. Whether the circuit court erred when it held a sentence modification hearing without Wilson or a court reporter present.

**Analysis**

***Plain Error Claim Relating to Evidence at Trial***

[¶17.]     "Where an issue has not been preserved by objection at trial, our review is limited to whether the trial court committed plain error." *State v. Thomas*, 2011 S.D. 15, ¶ 20, 796 N.W.2d 706, 713 (quoting *State v. Bowker*, 2008 S.D. 61, ¶ 45, 754 N.W.2d 56, 69). Under SDCL 23A-44-15 (Rule 52(b)), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." "Plain error merits reversal only when there is an '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Janis*, 2016 S.D. 43, ¶ 21, 880 N.W.2d 76, 82 (quoting State *v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443).

[¶18.]     We recently described the first two requirements of the plain error test in demanding terms by drawing upon well-reasoned decisions of the United States Supreme Court and federal courts of appeals. *See State v. McMillen*, 2019 S.D. 40, ¶ 23, 931 N.W.2d 725, 732. "An error is 'plain' when it is clear or obvious." *Id.* This "means that lower court decisions that are questionable but not *plainly* wrong (at

time of trial or at time of appeal) fall outside the Rule's scope." *Id.* (quoting

*Henderson v. United States*, 568 U.S. 266, 278, 133 S. Ct. 1121, 1130, 185 L. Ed. 2d

85 (2013)); *see also id.* (quoting *United States v. Watson*, 843 F.3d 335, 337 (8th Cir.

2016)) (holding there can be no plain error to review when "neither the Supreme

Court nor this court" has resolved the issue "beyond debate.").

[¶19.]     Here, Wilson characterizes the evidence he feels was irrelevant or

improper character evidence as "constitutionally impaired,"[9] but we cannot accept

this argument.  The evidence Wilson challenges relates to his own spontaneous

statements about the altercation with Steve made at or near the time of his arrest,

along with statements made by witnesses and police officers attempting to

determine what occurred.  As for Wilson's statements, they appear unprompted by

police questioning, and there is no plain rule that proscribes their admissibility.

Nor can we discern a plain rule that would require a court to intervene, absent

objection, to exclude the other statements made at the scene or the related

testimony of the police officers and eyewitnesses.

[¶20.]     Rather, reasonable arguments for admission of this evidence exist

under well-established evidentiary principles, and had there been a timely

objection, the circuit court could have considered the applicability of these accepted

rules in the context of the entire case.  *See* SDCL 19-19-803(1)-(2) (listing present

sense and excited utterance hearsay exceptions, respectively); SDCL 19-19-801(d)(2)

---

9.     In Wilson's view, this evidence included police in-car video with audio from the officers' body microphones that contained Wilson's statements that the police were part of the "dominant society" and had killed Wilson's father. Also included were the witnesses' statements that Wilson was behaving like an "alpha male" and appeared to be proud of the fact he had beaten Steve.

(describing statements not considered hearsay); *see also State v. Owen*, 2007 S.D. 21, ¶ 15, 729 N.W.2d 356, 363 (holding that a defendant's statements about drug use, sales, and theft was properly admitted as res gestae evidence in a murder conviction because it explained the circumstances of the crime charged); *State v. Hoadley*, 2002 S.D. 109, ¶¶ 36-37, 651 N.W.2d 249, 258 (permitting defendant's prior statements regarding his actions before and after the crime as res gestae evidence, "which is an exception" to SDCL 19-19-404(b)). Suffice it to say that we are unable to discern a clear violation of these rules, much less detect the constitutional impairment Wilson generally describes. The fact that the circuit court did not act sua sponte to exclude the evidence does not, therefore, establish plain error.

[¶21.] Wilson's specific argument that the admission of the evidence violated the balancing requirements of Rule 403 is also unconvincing because it overlooks the essential requirements of plain error review. *See* SDCL 19-19-403 (Rule 403).[10] When an issue has been forfeited, our review is focused upon initially determining the existence of plain error that unquestionably required the court to act on its own. *See supra* ¶ 17. Wilson's claim that the disputed evidence here would not have survived Rule 403 balancing is better suited to a claim that the circuit court abused its discretion in the context of an issue that was preserved by a timely objection.

---

10. Rule 403 provides that "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Indeed, none of the cases Wilson cites involve plain error review of evidentiary issues, and they are, for that reason alone, inapposite.[11]

### *Plain Error Claim Relating to Prosecutor's Closing Argument*

[¶22.] "Community conscience arguments ask the jury to place themselves in the shoes of the victim or make an appeal to the jury to protect the community." *McMillen*, 2019 S.D. 40, ¶ 26 n.7, 931 N.W.2d at 733 n.7. These arguments are generally improper, but inappropriate remarks "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *Jenner v. Leapley*, 521 N.W.2d 422, 428 (S.D. 1994) (quoting *United States v. Young*, 470 U.S. 1, 12, 105 S. Ct. 1038, 1044, 84 L. Ed. 2d 1 (1985)).

[¶23.] Here, the prosecutor referred to the fact that Steve will require additional dental work to remove teeth and replace them with dentures by suggesting that the jurors may agree that they would not want to "hav[e] a piece of [their] body taken out and hav[e] a fake part put back . . . ." The argument was part of an effort to respond to Wilson's argument that Steve's injuries were not serious.[12]

---

11. The closest case cited by Wilson in this regard is *State v. Birdshead*, but there we simply held that the defendant did not demonstrate an abuse of discretion even if we were to assume that the defendant had preserved the error. 2015 S.D. 77, ¶ 32, 871 N.W.2d 62, 74-75. We did not undertake plain error review. *Id.*

12. Wilson was charged with aggravated assault under the theory that he "[a]ttempt[ed] to cause serious bodily injury to another, or cause[d] such injury, under circumstances manifesting extreme indifference to the value of human life . . . ." SDCL 22-18-1.1(1). In his closing argument, Wilson's counsel told the jury that Steve's injuries were not serious and were not inflicted under circumstances manifesting extreme indifference to Steve's life. Of course, an actual serious injury is not required to establish aggravated assault under the prosecution's theory—only an attempt. *See State v.*

(continued . . .)

To the extent this comment suggested to the jurors that they place themselves in the role of a victim, it was improper. However, we do not believe the circuit court's lack of intervention rises to the level of plain error because Wilson has not demonstrated any impact on his substantial rights.

[¶24.] In its proper context, the prosecutor's brief comment was part of an already-short response to Wilson's claim that Steve did not sustain a serious injury. Immediately after the comment, the prosecutor granted Wilson's point that Steve's need for dental work was also attributable in part to his age. In addition, the State's case was strong. Wilson made admissions at the scene, and several disinterested witnesses described his violent assault upon Steve in stark terms. Under the circumstances, the circuit court did not plainly err.

[¶25.] Wilson also contends that the prosecutor improperly vouched for the State's case when it told the jury how the State's Attorney's office "exercise[s] [its] judgment" after reviewing all the evidence when making charging decisions. The comment came as part of the prosecutor's response to Wilson's argument that the aggravated assault charge was belated and suggested the State unjustifiably increased the severity of the charges. Though perhaps gratuitous, we are not convinced under the facts of this case that this statement constituted an improper effort to bolster the State's case, and Wilson cannot demonstrate the existence of error, plain or otherwise.

---

(. . . continued)

> *Miland*, 2014 S.D. 98, ¶ 14, 858 N.W.2d 328, 331 ("The [text of SDCL 22-18-1.1(1)] is phrased in the alternative, and if [the defendant] did not cause serious bodily injury, the evidence supports the conclusion that he *attempted* to cause such injury.").

### *Plain Error vs. Ineffective Assistance of Counsel*

[¶26.] Wilson advances a separate plain error argument that initially looks more like a claim of ineffective assistance of counsel. He argues that his trial counsel "should have sought to suppress . . . involuntary statements made in the absence of a reading of *Miranda* rights." Failing to do so, Wilson claims, "depriv[ed] [him] of a fair trial due [to] the inherent unfairness of their admission through neglect."[13]

[¶27.] Though not necessarily determinative of the true nature of the claim, we note Wilson does not expressly invoke the traditional principles associated with his right to effective assistance of counsel. He does not cite, for instance, the Sixth Amendment, which is the source of the right, and he omits any reference to the settled analysis for resolving ineffective assistance claims. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) ("First, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense.").

[¶28.] Plain error review, as described above, is decidedly different from analyzing ineffective assistance of counsel claims:

> Plain error review by appellate courts is used "to correct only particularly egregious errors" by a trial court. By comparison, the ineffective assistance inquiry . . . does not involve the correction of an error by the district court, but focuses more

---

13. The State viewed this as an ineffective assistance of counsel argument but urged us not to review it given the current posture of the case.

> broadly on the duty of counsel to raise critical issues for that court's consideration.

*United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017) (quoting *United States v. Dowell*, 388 F.3d 254, 256 (7th Cir. 2004)).[14]

[¶29.]     For plain error to exist, a trial court's failure to act sua sponte must lead to an error that was plain under established legal principles existing at the time of appellate review. "[W]hether a legal question was settled or unsettled at the time of trial, 'it is enough that an error be "plain" at the time of appellate consideration' for 'the second part of the four-part . . . [plain error] test to be satisfied.'" *Henderson*, 568 U.S. at 279, 133 S. Ct. at 1130-31 (quoting *Johnson v. United States*, 520 U.S. 461, 468, 133 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997)). Ineffective assistance of counsel analysis, by contrast, evaluates counsel's performance using a standard of objective reasonableness—not the certainty required for plain error—oriented to the time of the alleged deficiencies. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

---

14.     Our decision in *State v. Aliberti* expressed the accepted rule that generally limits ineffective assistance of counsel claims to collateral review but included a brief comment about the possibility of review on direct appeal in the case of "plain error." 401 N.W.2d 729, 732 (S.D. 1987). However, the use of this term was more colloquial than technical, as evidenced by our additional statement that "a more descriptive term would be 'substantial constitutional error.'" *Id.* at 732 n.3. A better statement of the rule is that we will make an exception to our reluctance to address an ineffective assistance claim on direct appeal only where counsel "was so 'ineffective and [the] representation so casual that the trial record evidences a manifest usurpation of [the defendant's] constitutional rights.'" *Id.* (quoting *State v. Phipps*, 318 N.W.2d 128, 131 (S.D. 1982)).

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

[¶30.] Here, rather than construing Wilson's argument as an ineffective assistance of counsel claim, we interpret it as one alleging only plain error—i.e. the trial court committed plain error by failing to unilaterally exclude Wilson's statements made to police after he was placed in custody.[15] *See Miranda v. Arizona*, 384 U.S. 436, 474, 86 S. Ct. 1602, 1628, 16 L. Ed. 2d 694 (1966). However, the merits of Wilson's *Miranda* claim suffer from a more fundamental flaw than its imprecise designation.

[¶31.] "[T]he United States Supreme Court created the well-known *Miranda* rule as a prophylaxis, requiring police officers to advise suspects of their rights and to terminate custodial questioning of an individual if he requests the assistance of counsel." *State v. Uhre*, 2019 S.D. 8, ¶ 34, 922 N.W.2d 789, 799 (citing *Miranda*, 384 U.S. at 474, 86 S. Ct. at 1628). The rule protects an individual's constitutional rights to counsel and against self-incrimination, but it only applies where there is both custody *and* police questioning. *See State v. Willingham*, 2019 S.D. 55, ¶ 30,

---

15. Had Wilson made the argument, it is possible we could have reviewed an ineffective assistance of counsel claim in this particular direct appeal because the record developed at the habeas hearing included testimony from his trial counsel on the *Miranda* issue. *See State v. Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d 706, 714 (observing that "[i]neffective-assistance-of-counsel claims are generally not considered on direct appeal" because the record is not sufficiently developed). Regardless, neither the fact that we do not consider an ineffective assistance claim here, nor the circuit court's declaration that Wilson's other habeas claims were dismissed "without prejudice" necessarily means that they will be cognizable in a second habeas proceeding. *See* SDCL 21-27-5.1 (regulating a petitioner's right to bring second or successive habeas corpus actions).

933 N.W.2d 619, 626. The requirement to provide a *Miranda* advisory does not apply where a defendant in custody makes "uncoerced, voluntary, and spontaneous statements . . . ." *Id.*, 933 N.W.2d at 627 (quoting *State v. Lewandowski*, 2019 S.D. 2, ¶ 22, 921 N.W.2d 915, 921).

[¶32.]     Here, Wilson does not describe specifically which statements should have been excluded, or more importantly, the alleged *Miranda* violation itself. Wilson's argument is premised incorrectly upon the view that all statements made after he was placed in custody should have been excluded in the absence of a *Miranda* advisory. However, he does not identify a single instance of police questioning or even "words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* 933 N.W.2d at 627 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S. Ct. 1682, 1690, 64 L. Ed. 2d 297 (1980)).

[¶33.]     Our review of the video and audio recordings of Wilson's interaction with police before and after his arrest has similarly failed to reveal an instance of police questioning. Although Wilson makes a number of statements about defending himself, they appear to be spontaneous and unprompted.

[¶34.]     However, even if Wilson had demonstrated error that was plain, he has not alleged, much less demonstrated, a prejudicial impact on his substantial rights. Nor can we discern any from the record, and we therefore hold that Wilson has failed to establish the existence of plain error.[16]

---

16.     Wilson argues that the instances of prejudice resulting from the plain error he asserts, even if individually insufficient to warrant relief, can be

(continued . . .)

***Motion for Judgment of Acquittal Due to Domestic Relationship***

[¶35.]    By statute, prosecutors are required to place a domestic abuse notation on charging documents and judgments of conviction drafted for the court when the "charge involves domestic abuse." SDCL 25-10-34. However, the "domestic" notation does not signal an essential element of the underlying offense. *See State v. Outka*, 2014 S.D. 11, ¶ 14, 844 N.W.2d 598, 604 (holding that "domestic abuse is not an element of simple assault" even where the simple assault is designated as one involving domestic abuse); *see also State v. Scott*, 2019 S.D. 25, ¶ 25, 927 N.W.2d 120, 128 (holding that the "domestic notation in [the defendant's] judgment and sentence did not alter his conviction for aggravated assault").

[¶36.]    Wilson was convicted in 2015 of one count of aggravated assault and four counts of simple assault, all involving Steve.[17] Each of the convictions was designated as domestic based upon the application of the previous version of SDCL 25-10-1. At the time he was charged with these offenses, victims of domestic abuse

---

(. . . continued)

aggregated to a critical tipping point of cumulative error. We disagree. We have concluded that none of Wilson's arguments satisfy plain error review, and this ends the inquiry. Even though some of our decisions have suggested the possibility that cumulative error could theoretically reach a critical point and impact a defendant's right to a fair trial, we have never found its existence. *See, e.g.*, *State v. Delehoy*, 2019 S.D. 30, ¶¶ 33-34, 929 N.W.2d 103, 111. We also question whether the stringent requirements for noticing unpreserved errors under the plain error doctrine could be eased to allow relief by somehow quantifying and aggregating prejudice. *See United States v. Barrett*, 496 F.3d 1079, 1121 n.20 (10th Cir. 2007) (describing a split of authority on "the question of how to, if at all, incorporate into the cumulative error analysis plain errors that do not, standing alone, necessitate reversal").

17.    The four counts of simple assault were apparently alternative theories of criminal liability for a single offense because the court imposed a sentence for only one of the simple assault convictions.

could include members of the same household, like Wilson and Steve. *See* SDCL 25-10-1(2) (repealed 2014). However, the Legislature amended SDCL 25-10-1 in 2014 by, among other things, eliminating household members from the definition of a qualifying domestic relationship. *See* SDCL 25-10-3.1 (effective July 1, 2014) (enacted in conjunction with the amendments to SDCL 25-10-1 and setting forth the types of relationships that qualify for domestic protection orders).

[¶37.] Wilson claims that the domestic designation rendered proof of a qualifying relationship an essential element of de facto criminal offenses known as aggravated domestic assault and simple domestic assault. He reasons he was, therefore, entitled to a judgment of acquittal because the State failed to prove the "domestic" element of the offenses under the current version of the law.

[¶38.] The premise of Wilson's argument regarding a separate class of domestic assault offenses is foreclosed by our decision in *Outka*, and his ancillary claim that the domestic designation constitutes an essential element overlooks our clear holding. In *Outka*, we rejected a defendant's argument that the circuit court should have allowed him to withdraw his guilty plea to simple assault (domestic) because the charging document did not allege the existence of a domestic relationship. 2014 S.D. 11, ¶¶ 12-16, 844 N.W.2d at 604-05. We held specifically that "domestic abuse is not an element of simple assault." *Id.* ¶ 14, 844 N.W.2d at 604. Citing *Outka*, we similarly held in *Scott* that a domestic notation on a defendant's judgment does not change the nature of an aggravated assault conviction. 2019 S.D. 25, ¶ 25, 927 N.W.2d at 128. Simply put, there is no

"domestic" form of assault under South Dakota law, and Wilson is not entitled to reversal of his assault convictions based on the changes in SDCL chapter 25-10.

[¶39.] Wilson's sustained effort to apply the United States Supreme Court's decision in *Apprendi v. New Jersey* is unsustainable. 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000). The rule of *Apprendi* provides that any fact, other than a prior conviction, which increases the statutory penalty for an offense must be proven to a jury. *Id.* The problem Wilson identifies here is not that the jury failed to consider the domestic relationship issue, but that it used the wrong legal standard. This type of error, however, does not implicate *Apprendi,* and it would not yield an acquittal in any event, even if the domestic relationship was an essential element. *See State v. Shaw*, 2005 S.D. 105, ¶ 70, 705 N.W.2d 620, 638 (citation omitted) (holding that retrial is the remedy for erroneous jury instructions that provide an "inadequate understanding of the law . . .").

[¶40.] Still, the fact remains that the amendments to SDCL chapter 25-10 mean that Wilson's assault convictions should not have been designated as domestic, and the court should not have imposed two $25 domestic violence fees for his assault convictions. *See* SDCL 25-10-17.1 (providing for a $25 domestic violence fee to be assessed at the time of a defendant's sentencing and remitted to the clerk of court). The court simply lacked authority to do so. *See State v. Litschewski*, 2011 S.D. 88, ¶ 15, 807 N.W.2d 230, 235 (holding the circuit court lacked authority in its sentencing determination under the law in effect at the time of sentencing).[18] We

---

18. The State argues that the court correctly instructed the jury on the domestic relationship issue because the prior version of SDCL 25-10-1 was in effect at

(continued . . .)

therefore remand the case with instructions to enter a new judgment omitting the domestic designations and the imposition of the $25 domestic violence fees. *See United States v. Mink*, 476 F.3d 558, 564 (8th Cir. 2007) (sentencing court plainly erred by assessing jury costs where it lacked statutory authority to do so).

### *Sentence Modification Hearing*

[¶41.]     A criminal defendant has a "constitutional and statutory right . . . [to] 'be present [in court] when his presence is related to an opportunity to defend himself against the criminal charge.'" *State v. Berget*, 2014 S.D. 61, ¶ 52, 853 N.W.2d 45, 66 (quoting *Kost v. State*, 344 N.W.2d 83, 86 (S.D. 1984)). Our rules of criminal procedure further provide that "[a] defendant shall be present at his arraignment, at the time of his plea, at every stage of his trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence . . . ." SDCL 23A-39-1 (Rule 43(a)).

[¶42.]     Here, although Wilson was not present when the circuit court met with counsel off the record and issued an order modifying his sentence, he was present for all other hearings, his trial, and the imposition of his original sentence. Therefore, even if there was non-compliance with SDCL 23A-39-1 and Wilson

---

(. . . continued)

> the time of Wilson's offenses. However, it cites no authority, and the issue is not well developed in the briefs. Further, our decision in *Litschewski* points to the opposite conclusion, at least where the rule benefits the defendant and no ex post facto issues exist. 2011 S.D. 88, ¶ 8 n.3, 807 N.W.2d at 232 n.3 (holding version of statute in effect when defendant was sentenced applied).

possessed a statutory right to be present[19] when his post-sentence modification was discussed between court and counsel, he has not demonstrated any discernible prejudice. *See Kost*, 344 N.W.2d at 86 (applying harmless error to alleged violation of defendant's right to be present). This latter conclusion is true despite the fact that the circuit court did not utilize a method for making a verbatim record. Simply put, Wilson has not alleged that the decision to correct the sentence was, itself, erroneous.

## Conclusion

[¶43.] The circuit court did not commit plain error when it did not sua sponte exclude evidence Wilson alleges to be inadmissible. Nor did the court commit plain error by failing to intervene during the prosecutor's closing argument. Though the prosecutor's comments may have been improper, Wilson is unable to demonstrate an impact on his substantial rights.

[¶44.] The circuit court correctly denied Wilson's judgment for acquittal on the assault charges because designating them as "domestic" did not constitute an additional essential element. However, given the legislative amendments in effect at the time of sentencing, the court lacked authority to designate the assault convictions as domestic and order payment of the statutory domestic violence fees.

---

19. This assumption is made only for purposes of our discussion here, and we think it may not be entirely reliable for an additional reason. Under the provisions of SDCL 23A-39-3(2), "[a] defendant need not be present . . . in prosecutions for misdemeanors . . . ." Although Wilson's actual prosecution included both felony and misdemeanor offenses, the post-judgment sentence modification related only to misdemeanor offenses. However, because the issue is not well developed in the parties' briefs, we will leave the question for another case.

#28742

Finally, Wilson has not demonstrated any prejudicial error resulting from his absence at a stipulated sentence modification meeting between the court and counsel.

[¶45.]     We affirm and remand with instructions to issue a new judgment removing the domestic designation from Wilson's assault convictions and the requirement to pay two $25 domestic violence fees.

[¶46.]     GILBERTSON, Chief Justice, and KERN, JENSEN, and DEVANEY, Justices, concur.