#29164-a-SRJ
**2021 S.D. 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,　　　　　　　　Plaintiff and Appellee,

　　v.

OZIE LEE TOWNSEND,　　　　　　　　　　Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON SOGN
Judge

\* \* \* \*

JASON R. RAVNSBORG
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota　　　　　　　　　　Attorneys for plaintiff and
　　　　　　　　　　　　　　　　　　　　appellee.


MARK KADI of
Minnehaha County Office of the
　　Public Advocate
Sioux Falls, South Dakota　　　　　　　　Attorneys for defendant and
　　　　　　　　　　　　　　　　　　　　appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 16, 2021
OPINION FILED **05/05/21**

#29164

JENSEN, Chief Justice

[¶1.]        Ozie Lee Townsend was convicted of second-degree rape and simple assault.  He appeals his conviction for second-degree rape, arguing that the circuit court erred in denying his motion for a judgment of acquittal because there was insufficient evidence of "force" as required under SDCL 22-22-1(2).  Townsend also asks this Court to review alleged errors at trial under plain error review and raises an ineffective assistance of counsel claim.  We affirm.

**Facts and Procedural History**

[¶2.]        Around 7:00 p.m. on October 12, 2017, eighteen-year-old K.N. left her apartment to go on a jog in Sioux Falls.  It was still light outside, and she was wearing running tights, a t-shirt, and tennis shoes.  K.N. ran about two blocks from her apartment when she stopped at a curb and a van pulled up in front of her.  K.N. saw a man in the van, whom was later identified as Townsend.  She did not know Townsend at the time, but she thought she might have seen him before at the Dollar Store where she worked.

[¶3.]        Townsend offered to give K.N. a ride, but she declined.  Townsend insisted and offered K.N. marijuana, methamphetamine, and alcohol.  K.N. testified that, except for marijuana, she had never used drugs before.  However, she wanted to use the drugs and voluntarily got into the front passenger seat of Townsend's van.

[¶4.]        Townsend turned on the radio and began to drive.  He told K.N. that he was a good person and he would not hurt her.  He parked the van about a mile away in a parking lot near Covell Lake.  Townsend got out and went to the back of

-1-

the van to urinate. He walked back up to the driver's side and told K.N. to get into the backseat. K.N. asked him why, but Townsend did not answer and told her again to get into the backseat. K.N. told him she did not want to. Townsend started walking around the van towards the front passenger seat where K.N. was sitting. He opened the rear passenger door, and K.N. exited the front passenger seat and reentered the van through the rear passenger door.

[¶5.] At first, K.N. sat facing forward on the bench in the backseat. Then she turned ninety degrees to face Townsend, who was still standing outside the rear passenger door. Townsend told K.N. to lay down. K.N. told him that she did not want to and moved forward to try to exit the van. K.N. testified that she pushed Townsend with her arm while trying to move past him, but Townsend pushed her shoulder back; and she laid down. On direct examination, K.N. described the push as "like he just nudged [my shoulder] back for me to lay down."

[¶6.] Townsend grabbed K.N.'s thighs and pulled her toward the open door. He pulled her pants and underwear down to her ankles. Then he pulled his pants down and put K.N.'s legs on his shoulders. Townsend began masturbating and rubbing the outside of K.N.'s vaginal area. He vaginally penetrated K.N. and muttered profanities about K.N.'s body parts until he ejaculated. K.N. testified at trial that she felt "pretty pathetic" during the assault. Townsend attempted to help K.N. put her pants back on once he was finished, but K.N. told him she could do it herself. Townsend told her to get back in the front seat of the van, which K.N. did.

[¶7.] Townsend drove K.N. back to the corner where he had picked her up. K.N. asked Townsend for his number. Later, she told law enforcement that she

wanted his number so that she could give it to them when she reported the assault. Townsend gave her his number and told her his name was Tony. Before he left, he told K.N. that he wanted to give her something for the sexual encounter and put $7 in her hand. K.N. testified that she felt "pretty numb" at that point.

[¶8.] Once Townsend drove off, K.N. called the Compass Center, an organization that assists victims of sexual assault. When the Compass Center did not answer, she called 911. Two male officers arrived on scene, and K.N. reported the assault. She told the officers that her assailant was driving a bluish van and gave them Townsend's phone number. Officer Chase Vanderhule asked her if any money had been exchanged, and K.N. told him no. K.N. later testified that she lied because she was embarrassed. The officers attempted to call Townsend's number. Someone answered the phone initially, but then the call was disconnected. The officers tried to call the number again, but Townsend's phone appeared to have been turned off.

[¶9.] The officers secured an ambulance to transport K.N. to a hospital for a sexual assault examination. Nurse Wharton, who was trained in sexual assault examinations, performed the exam. She took samples of bodily fluid from K.N. that were sent to the state forensic laboratory for testing. Nurse Wharton observed that K.N. had white fluid inside and outside of her vaginal area and had redness and bruising around her cervix. She stated that these observations were abnormal for an internal pelvic exam and a "rare injury" in her experience. However, she could not provide an opinion on whether the injuries arose from nonconsensual vaginal penetration. Nurse Wharton also found the $7 that Townsend had given K.N. in

K.N.'s bra. She testified that K.N. told her that Townsend had given her the money after the assault. Nurse Wharton observed that K.N. was "very stoic" and "very quiet" during the exam.

[¶10.]     On October 17, 2017, around 2:00 p.m., Detective Erin McGillivray met K.N. to continue the investigation. K.N. told Detective McGillivray that she entered the van voluntarily after Townsend offered her drugs and alcohol, but she was sober on the night of the assault. She also told Detective McGillivray that Townsend assaulted her in the backseat of a bluish van when he pushed her down, pulled her pants down, and had sex with her without her consent. K.N. estimated that the sexual assault lasted approximately ten to fifteen minutes. Detective McGillivray testified that K.N. told her she was crying throughout the assault and that Townsend gave her $7 after he dropped her off.

[¶11.]     At approximately 3:00 p.m. that afternoon, Detective McGillivray called the phone number K.N. provided for Townsend. Townsend answered and confirmed his identity. Detective McGillivray told him that she was investigating an incident at a park and may have provided K.N.'s first name. Townsend responded that "he didn't know [K.N.] and that nothing happened in a park." Then he hung up. After the call, Detective McGillivray stepped away from her desk for a few minutes. When she returned, she had four missed calls from Townsend but no new messages.

[¶12.]     Within the hour, Detective McGillivray stepped away from her desk again and returned to find two more missed calls from Townsend. She called back. Townsend did not pick up, but shortly thereafter he called back and spoke to

Detective McGillivray a second time. Again, Townsend denied any knowledge of the assault or K.N. However, he admitted that he had two vans. He stated one van was green, but he would not provide the color of the other van. Detective McGillivray never confirmed the color of Townsend's other van.

[¶13.] Townsend was indicted on March 2, 2018, on four counts: (1) rape in the second-degree, (2) simple assault—recklessly causing bodily injury, (3) simple assault—physical menace, (4) simple assault—causing injury, not serious. The State also filed a part II habitual offender information. A three-day jury trial began on May 28, 2019. The State offered K.N.'s testimony as well as the testimony of Officer Vanderhule, Detective McGillivray, and Nurse Wharton. Stacey Smith, a state forensic scientist, also testified that the DNA obtained from K.N.'s person matched Townsend's DNA profile, and the match "would not be expected to occur more than once among unrelated individuals in the world population." The State played a six-minute audio recording of Detective McGillivray and Townsend's second phone conversation before the jury.

[¶14.] At the close of the State's evidence, Townsend made a motion for a judgment of acquittal on all counts. He argued there was insufficient evidence of force, coercion, or threats to establish a prima facie case of second-degree rape under SDCL 22-22-1(2). In support, Townsend argued K.N. testified that he had never verbally threatened her with any kind of harm, a "nudge" was insufficient to establish force under the statute, and the medical examination could not confirm whether there had been nonconsensual vaginal penetration. Additionally, Townsend argued there was insufficient evidence of injury to support convictions on

the three simple assault charges, asserting that the injuries to K.N.'s genitalia were associated with sexual activity and were not qualifying bodily injuries under SDCL 22-18-1. The State responded that K.N.'s testimony about the assault and Nurse Wharton's testimony pertaining to K.N.'s injuries were sufficient to make a prima facie case on all counts. The circuit court denied the motion.

[¶15.] The jury returned guilty verdicts on count 1, rape in the second-degree, and count 2, simple assault—recklessly causing bodily injury. It returned not guilty verdicts on the other two simple assault counts. The court sentenced Townsend to thirty years in the state penitentiary with ten years suspended on the second-degree rape conviction and imposed a concurrent county jail sentence on the simple assault conviction. Townsend appeals and raises three issues.

## Analysis and Decision

### 1. Whether the circuit court erred when it denied Townsend's motion for a judgment of acquittal on the second-degree rape charge.

[¶16.] The denial of a motion for a judgment of acquittal is reviewed de novo. *State v. Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d 900, 904. "When conducting our review, we determine whether the evidence was sufficient to sustain the conviction." *State v. Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d 488, 500. "We consider the evidence in the light most favorable to the verdict and will not set aside a guilty verdict on appeal if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." *State v. Bausch*, 2017 S.D. 1, ¶ 25, 889 N.W.2d 404, 411.

[¶17.] On appeal, Townsend challenges the conviction for second-degree rape, arguing that the evidence was insufficient to show that the sexual encounter with K.N. was a result of force, coercion, or threats. He does not challenge the circuit court's denial of his motion for a judgment of acquittal on the simple assault charges.

[¶18.] SDCL 22-22-1(2) defines second-degree rape as "an act of sexual penetration accomplished with any person . . . [t]hrough the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution . . . ." Townsend argues that K.N.'s testimony that he pushed or "nudged" her was insufficient to constitute "force" under SDCL 22-22-1(2). Thus, he argues that the circuit court erred in denying his motion for a judgment of acquittal and that his conviction for second-degree rape must be set aside. In support, Townsend cites *Smith v. Zachary* for the proposition that other courts have held that "nudges" are significantly less than unlawful force. 255 F.3d 446, 452 (7th Cir. 2001). However, *Smith* involved an inmate's Eighth Amendment claim for excessive force by a corrections officer, not a claim of rape through the use of force.

[¶19.] The circuit court instructed the jury that "force" means "to compel by physical means." Townsend did not object to this definition at trial and has not challenged the instruction on appeal. Instead, he argues that the circuit court erred when it denied his motion for a judgment of acquittal because it erroneously assumed "force" is synonymous with the act of sexual penetration. Townsend points to the State's argument, made in response to his motion for a judgment of acquittal,

that "[t]he term force has been defined by our court as the act itself of the penetration. It takes force to penetrate someone. There's some type of force."

[¶20.] However, in denying the motion for a judgment of acquittal, the circuit court considered the evidence of vaginal bruising and the evidence that Townsend pushed K.N. and removed her pants. Further, the physical means by which penetration is accomplished may be an appropriate consideration when determining whether "force" was used, and the definition of "force" given to the jury did not suggest that an act of penetration alone establishes force.

[¶21.] Townsend also claims K.N. was an unreliable witness. He points out that K.N. lied to Officer Vanderhule when she denied that Townsend gave her money after the alleged assault. At trial, K.N. also stated that she had never used drugs before, but then clarified that she did not consider marijuana to be a drug and had used it previously. Townsend offers an alternative theory of the case in which K.N. sought drugs from him and consented to the sexual activity. Because Townsend did not provide drugs like he promised and insulted K.N. by paying her $7 after they had sex, he argues that K.N. "constructed a rape charge to retaliate following her shattered expectation to receive and use drugs."

[¶22.] Based on our review of the record, we conclude there is sufficient evidence to sustain Townsend's conviction.[1] K.N. testified that Townsend

---

1. The State argued at trial that Townsend used force to commit the act of second-degree rape; it did not argue that the rape occurred through the use of "coercion." However, the facts may also support a conviction on these grounds. Coercion exists when "one is, by the unlawful conduct of another, induced to do or perform some act under circumstances which deprive her of the exercise of her free will; it may be either actual, where physical force is

(continued . . .)

physically blocked her from exiting the van, pushed her back, pulled her hips toward him, and removed her pants and underwear before he assaulted her. Townsend's claim that K.N. was not credible was a matter for the jury. *State v. Thoman*, 2021 S.D. 10, ¶ 37, 955 N.W.2d 759, 771 ("The jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence."). Further, consistent with her trial testimony, K.N. told Detective McGillivray that Townsend pushed her back, and K.N. reported that she cried while Townsend had sexual intercourse with her. Nurse Wharton also testified that K.N. had redness and bruising along her cervix, which she stated was a "rare injury." Therefore, the circuit court properly denied the motion for a judgment of acquittal.

> **2. Whether the circuit court committed plain error by allowing testimony about Townsend's communications with Detective McGillivray and by allowing the State to present community conscience arguments.**

[¶23.] Townsend argues that at least ten errors were made during trial that his defense counsel failed to raise to the circuit court.[2] He argues that we should review these claims for plain error. Most of these alleged errors pertain to the introduction of evidence that Townsend claims violated his Fifth Amendment rights and the State's purported community conscience arguments to the jury.

---

(. . . continued)
> put on a woman to compel her to do an act against her will, or implied, where the relation of the parties is such that one is under subjection to the other." *State v. Willis*, 370 N.W.2d 193, 199 (S.D. 1985).

2. Appellate counsel did not represent Townsend at trial.

[¶24.]    "We invoke *our discretion* under the plain error rule cautiously and only in *exceptional circumstances.* To establish plain error, an appellant must show (1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if, (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d 725, 729-30.

[¶25.]    Concerning Townsend's Fifth Amendment claims, he argues that the circuit court committed plain error by allowing the State to present Detective McGillivray's testimony that Townsend "hung up" on her, missed some of her calls, and called back multiple times without leaving voicemails. Townsend also claims that the circuit court should not have allowed the State to introduce the six-minute phone call between Detective McGillivray and himself, at the end of which Detective McGillivray invited him to come to the police station to talk to her. He maintains Detective McGillivray should not have been allowed to testify that she never met Townsend in person to discuss the rape allegation and cites *State v. McBride* for the proposition that "[t]he refusal of a suspect to make a statement is not admissible evidence." 296 N.W.2d 551, 555 (S.D. 1980) (citing *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245, 49 L. Ed. 2d 91 (1976)). Collectively, Townsend argues that this evidence violated his Fifth Amendment right to remain silent. The State responds that the evidence was not offered to comment on Townsend's silence. It was offered to show the timeline of the investigation and the steps Detective McGillivray took as part of the investigation.

[¶26.] Townsend did not invoke his right to remain silent at any time during his conversations with Detective McGillivray. *Stone*, 2019 S.D. 18, ¶ 29, 925 N.W.2d at 498 ("The invocation of the right to remain silent requires more than an ambiguous act, omission or statement."). *See also Berghuis v. Thompkins*, 560 U.S. 370, 381-82, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010) (holding that "an accused who wants to invoke his or her right to remain silent [must] do so unambiguously"). Further, in considering Townsend's claim that the State's evidence was a comment on his right to remain silent at trial, "the test is whether the language used by the prosecutor was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's right to remain silent." *Stone*, 2019 S.D. 18, ¶ 28, 925 N.W.2d at 498.

[¶27.] We do not conclude that the challenged evidence—concerning Townsend's statements to Detective McGillivray and the missed calls between them—was intended, or could be construed by the factfinder, as a comment on Townsend's right to remain silent. Instead, this evidence presented relevant information concerning Townsend's identity, his admission that he owned two vans, and his denial that he knew or had prior contact with K.N. at the park; despite the DNA evidence to the contrary. Additionally, Detective McGillivray's testimony that Townsend did not come down to the station does not appear to be a comment on Townsend's silence. Rather, it informed the jury of the full extent of Detective McGillivray's contact and communications with Townsend during her investigation. At no point during the presentation of this evidence did the State or Detective McGillivray reference or comment on Townsend's failure to testify or the invocation

of his right to remain silent. Therefore, Townsend has failed to show an error concerning the admission of Detective McGillivray's testimony or the recorded phone call.

[¶28.]	Townsend also claims that the State made several "community conscience" arguments during its closing argument that were prejudicial to him. The relevant portion of the statements at issue are set forth below:

> When [K.N.] was sitting in the back of that vehicle and was told to lay down and she doesn't, she says no, there's more discussion about it and eventually she's pushed backwards onto that seat, and her pants are removed. Did that put her in fear that she would be injured? It makes sense that it would. *We have a stranger, right, forcing us down into the back of the van, taking off our pants and vaginally penetrating. We've given signs that we didn't want that and it happens anyway. And we don't fight back. . . .* And it doesn't make sense sometimes when people don't fight back. . . .
>
> Not only is she raped and traumatized by the defendant, but she then calls law enforcement for help. She has to relive what has happened to her while explaining it to those officers, two male officers, who showed up on the scene. And there is some embarrassing stuff that happened. *We're given that money, we agreed to get into that vehicle thinking we were going to use drugs. It is hard, isn't it? Isn't it hard to admit embarrassing things, embarrassing decisions that we've made that have caused us to put ourselves at risk, to put ourselves in that position?*

[¶29.]	"Community conscience arguments are improper." *State v. Janklow*, 2005 S.D. 25, ¶ 46, 693 N.W.2d 685, 700. They "ask the jury to place themselves in the shoes of the victim or make an appeal to the jury to protect the community." *State v. Wilson*, 2020 S.D. 41, ¶ 22, 947 N.W.2d 131, 137. "[I]nappropriate remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *Id*. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone,

but, if the prosecutor's conduct affects the fairness of the trial when viewed in context of the entire proceeding, reversal can be warranted." *McMillen*, 2019 S.D. 40, ¶ 27, 931 N.W.2d at 733.

[¶30.] The State's remarks were improper "[t]o the extent [they] suggested to the jurors that they place themselves in the role of a victim . . . ." *Wilson*, 2020 S.D. 41, ¶ 23, 947 N.W.2d at 138. The State argues the statements were "offhand" remarks that were not offered to inflame the prejudice of the jury but only to "ask[] the jurors to consider the evidence." We acknowledge that the State may have made these remarks to explain why K.N. did not respond more aggressively to Townsend's behavior and why she initially lied about receiving money from him. However, neither rationale would permit the State to ask the jury to place themselves into the position of the victim in this case.

[¶31.] Nevertheless, even if the error was sufficiently plain to require the court's intervention, Townsend "has not demonstrated [the error had] any impact on his substantial rights." *Id.* To show that an error affected his substantial rights, Townsend must demonstrate that it was prejudicial in that it "affected the outcome of the [circuit] court proceeding." *State v. Beck*, 2010 S.D. 52, ¶ 17, 785 N.W.2d 288, 294 (alteration in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429, 173 L. Ed. 2d 266 (2009)). "'Prejudice' in the context of plain error requires a showing of a 'reasonable probability' that, but for the error, the result of the proceeding would have been different." *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 33, 785 N.W.2d 272, 283 (citing *United States v. Rush–Richardson*, 574 F.3d 906, 911 (8th Cir. 2009)). *See also United States v. Dominguez Benitez*, 542

U.S. 74, 81-82, 124 S. Ct. 2333, 2339, 159 L. Ed. 2d 157 (2004). The comments were brief and were not repeated during the three-day trial. Because Townsend has not established an error that was prejudicial, he has not demonstrated plain error on this record.

### 3. Whether the representation provided by Townsend's trial counsel was constitutionally deficient.

[¶32.]      "Ineffective-assistance-of-counsel claims are generally not considered on direct appeal." *State v. Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d 706, 714. Habeas corpus proceedings are "[t]he preferred arena for an ineffective assistance claim" primarily because the "attorneys charged with ineffectiveness can explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review." *State v. Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d 250, 256–57. "Therefore, we have stated that absent exceptional circumstances, we will not address an ineffective assistance claim on direct appeal. We depart from this principle only when trial counsel was so ineffective and counsel's representation so casual as to represent a manifest usurpation of the defendant's constitutional rights." *State v. Vortherms*, 2020 S.D. 67, ¶ 30, 952 N.W.2d 113, 120–21.

[¶33.]      Townsend presents the same arguments he raised under his plain error claim, which we have rejected, to support his ineffective assistance of counsel claim. We do not find there are exceptional circumstances that warrant our consideration on direct appeal.

[¶34.]      We affirm.

[¶35.]      KERN, SALTER, DEVANEY, and MYREN, Justices, concur.