#25628-rev & rem-SLZ

**2011 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                  Plaintiff and Appellee,

v.

NATHANIEL J. THOMAS,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

* * * *

HONORABLE ARTHUR L. RUSCH
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                          and appellee.

STEVE MILLER                                  Attorney for defendant
Sioux Falls, South Dakota                     and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2011

OPINION FILED **04/13/11**

#25628

ZINTER, Justice

[¶1.]     Nathaniel Thomas was convicted of Reckless Burning, a Class 4 felony. He appeals, claiming that the circuit court plainly erred in failing to give appropriate instructions on accomplice testimony. He also contends that instructional and other errors deprived him of effective assistance of counsel.[1] Finding that Thomas received ineffective assistance of counsel, we reverse and remand for a new trial.

*Facts and Procedural History*

[¶2.]     The Pressbox bar and restaurant in Vermillion caught fire and burned in the early morning hours of September 29, 2008. When firefighters arrived, the north side of the building was in flames. Investigators found a Coors Light bottle with a cloth sticking out of it on the northeast side of the building. A police officer described it as a "Molotov cocktail." The police treated the case as arson, but no immediate headway was made in the investigation.

[¶3.]     Nine months after the incident, Detective Crystal Brady received a tip that Ryan Kightlinger, Thomas's cousin, had information about the fire. Kightlinger's information led Detective Brady to Thomas and to Jimmy and Jeremy Broomfield. Following interviews with Kightlinger and the Broomfields, Detective Brady concluded that Thomas and the Broomfields set a fire behind the Pressbox that spread to the building.

[¶4.]     Detective Brady subsequently interviewed Thomas. Thomas admitted reporting the fire to 911 at 3:34 a.m. Thomas also admitted that the Broomfields

---

1.     Thomas's appellate counsel did not represent him at trial.

-1-

were at his house (across the street from the Pressbox) drinking on the night of the fire. Thomas, however, claimed that the Broomfields left his house two or three hours before he reported the fire. Thomas further claimed that he went to bed immediately after the Broomfields left and that he slept until he woke up to go to the bathroom. Thomas indicated that while in the bathroom, he saw the fire and immediately called 911. Although Thomas denied talking with anyone from the time he went to bed until he reported the fire, his cell phone records reflected that he had eight incoming and outgoing phone calls between 2:50 a.m. and the 911 call at 3:34 a.m. The calls were to and from Jimmy Broomfield, Kightlinger, and Thomas's mother.

[¶5.] Thomas was charged with Reckless Burning in violation of SDCL 22-33-9.3. Counsel was appointed but withdrew due to a conflict. Substitute counsel was appointed. Counsel prevailed on a motion to continue the jury trial but filed no other pretrial motions.

[¶6.] At trial, the Broomfields were the only witnesses directly implicating Thomas in starting the fire. Jimmy testified that he, Jeremy, and Thomas had been drinking together the night of September 28 into the morning hours of September 29. He indicated that the three of them took two empty Coors Light bottles and filled them with gasoline from Jimmy's car. They also took paper towels from Thomas's home to help light the fire. They poured some of the gasoline onto a gravel patch approximately ten or fifteen feet behind the building and ignited the gasoline. Both Broomfields testified that they saw Thomas light the fire. According to the Broomfields, the fire burned and then died down. They further claimed that

they put out the remaining fire to the point it was just smoking and went home to bed. Jimmy testified that approximately ten minutes after walking to his home across the alley, he looked out the window and saw that the fire had started up again. Jimmy testified that he called Thomas, told him about the fire, and tried to get him to call 911.

[¶7.]     Although Thomas admitted being with the Broomfields earlier that evening, he vehemently denied any involvement with the fire. He contended that animosity and the Broomfields' plea agreements motivated them to lie. He also contended that the Broomfields had a motive to lie because Thomas had assaulted Jimmy.

[¶8.]     Although the Broomfields' trial testimony directly implicated Thomas, Jimmy conceded that he gave two prior statements of the events to Detective Brady. Both statements excluded Thomas's involvement. Both Jimmy and Jeremy also conceded that they entered into plea agreements with the State as a result of the fire. The plea agreements required the Broomfields to testify at Thomas's trial.

[¶9.]     Other than the Broomfields, Ryan Kightlinger was the only other witness who linked Thomas to the fire. Kightlinger testified that Thomas called Kightlinger around three a.m. on September 29. Kightlinger testified that during the phone call Thomas indicated that he and the Broomfields had been drinking heavily and that "they" started the fire. However, when asked by the state's

attorney what "they" meant, Kightlinger conceded that Thomas never indicated he

was personally involved in starting the fire.[2]

[¶10.]	Chad Grunewaldt, the owner of the Pressbox, was the only other

witness who observed people around the building the morning of the fire. He

---

2.	Kightlinger testified:

> A.	He said that they started a small fire in the alleyway. He didn't say specifically who and what. He just said they started a fire in the alleyway.
> Q.	Okay. So Nate [Thomas] told you that they started a fire.
> A.	Right.
> Q.	The three of them.
> A.	Right.
> . . .
> Q.	So, Ryan, let's -- let's go back, just so that we're all clear here. When you talked to Nate [Thomas] on the phone, he did tell you that he had -- he had been one that had started the fire?
> A.	He didn't specifically clarify he himself did it.
> Q.	But he said that the three of them had been over and started the fire?
> A.	He didn't -- he didn't -- he didn't speculate on all three of them. He just said that, you know, it was -- like a slang language. I didn't really understand at the moment, because he was frantic, but --
> Q.	Okay. So you didn't get the details of it?
> A.	Exactly.
> Q.	But from your conversation with him, did you figure that he was involved in this some way?
> A.	I did, but I didn't know what happened. I wasn't there.
> . . .
> Q.	(By Thomas's trial counsel on cross-examination) You stated that when you talked to Nate [Thomas], he never told you he started the fire?
> A.	Correct.

In addition to the equivocal nature of this testimony, Kightlinger was mistaken about who initiated the phone call. Although Kightlinger testified that Thomas initiated the call, Thomas's cell phone records reflected that Kightlinger initiated the call.

testified that around two a.m., he saw three male college-aged students grilling, hanging out, and drinking in the vicinity of Thomas's front yard. But Thomas's front yard was shared by other tenants, and Grunewaldt did not identify the individuals.

[¶11.]     The jury found Thomas guilty, and he raises two issues on appeal:

> 1.     Whether the circuit court plainly erred in instructing the jury on accomplice testimony.
>
> 2.     Whether Thomas was denied effective assistance of trial counsel.

*Decision*

[¶12.]     Thomas's primary contention in both issues involves claimed inadequacies in the circuit court's accomplice instruction. The court gave an accomplice instruction (Instruction 16) sua sponte. Instruction 16 provided:

> You cannot find a defendant guilty based upon the testimony by a co-defendant that incriminates the defendant unless that testimony is corroborated by other evidence which tends to connect the defendant with the commission of the offense.

[¶13.]     Thomas argues that this instruction was incomplete in three respects. Thomas first contends that because the instruction referred to "co-defendants" rather than "accomplices," the jury was not instructed that the Broomfields' testimony had to be corroborated. Second, Thomas contends that the court did not adequately instruct on the nature of the evidence necessary to corroborate accomplice testimony. Thomas points out that the instruction did not indicate that corroborative evidence is insufficient if it merely shows the commission of the crime or the circumstances thereof and that one accomplice cannot corroborate another.

Thomas finally contends that the court failed to instruct that accomplice testimony must be viewed with caution.

[¶14.] Because trial counsel did not object to the court's instruction or propose any defense instructions on accomplice testimony, Thomas concedes that these issues are not preserved for regular appellate review. Consequently, Thomas seeks relief on theories of plain error and ineffective assistance of counsel. Both theories require a showing of error and prejudice.[3] We begin by discussing the alleged errors. We then consider the issue of prejudice.

[¶15.] Thomas contends the circuit court erred in failing to instruct the jury that the Broomfields' testimony had to be corroborated. SDCL 23A-22-8 provides:

> A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

Thomas claims that because Instruction 16 only required corroboration of a "co-defendant's" testimony and the Broomfields were not co-defendants in this trial, the instruction could not have logically or grammatically applied to accomplices Jimmy and Jeremy Broomfield. We disagree.

---

3. Plain error requires a defendant to establish "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Beck*, 2010 S.D. 52, ¶ 11, 785 N.W.2d 288, 293 (quoting *State v. Mulligan*, 2007 S.D. 67, ¶ 26, 736 N.W.2d 808, 818 (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997)))). To be entitled to relief on a claim of ineffective assistance of counsel, a defendant must show both that his counsel provided ineffective assistance and that he was prejudiced as a result. *Steichen v. Weber*, 2009 S.D. 4, ¶ 24, 760 N.W.2d 381, 392.

[¶16.]	In reviewing the sufficiency of jury instructions, the question is what a reasonable juror could have understood from the instructions. *State v. Robinson*, 1999 S.D. 141, ¶ 16, 602 N.W.2d 730, 734. In this case, Instruction 16 informed the jury that corroboration was required of "a co-defendant." Additionally, the jury was instructed that "the [S]tate's witnesses, James and Jeremy Broomfield, have pleaded guilty to crimes which arose out of the same events for which the defendant is on trial here." Because a reasonable juror would have understood that the Broomfields were the only witnesses who could have been co-defendants, the jury would have understood that the Broomfields' testimony was required to be corroborated.[4] Under the unique facts and circumstances of this case, we see no error in the court's modification of the accomplice instruction to apply to co-defendants rather than accomplices.

[¶17.]	Thomas next contends that the circuit court erred in failing to sufficiently describe the nature of the testimony necessary to corroborate accomplice testimony. Thomas first points out that the court's instruction omitted the second sentence of SDCL 23A-22-8, which provides: "corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." Thomas also points out that the court's instruction did not inform jurors that one accomplice's testimony cannot be used to corroborate another accomplice's

---

4.	Thomas also argues that the circuit court erred by not instructing the jury that the Broomfields were accomplices as a matter of law. *See State v. Hoadley*, 319 N.W.2d 505, 506 n.1 (S.D. 1982). Because the court's instructions required that the Broomfields' testimony be corroborated, there was no need to also instruct that the Broomfields were accomplices as a matter of law.

testimony. *See State v. Wiegers*, 373 N.W.2d 1, 16 (S.D. 1985) ("The testimony of one accomplice cannot be regarded as corroborating the testimony of another accomplice within the meaning of SDCL 23A-22-8."); *State v. Dominiack*, 334 N.W.2d 51, 54 (S.D. 1983) (stating that the jury should have been further instructed that an accomplice cannot corroborate the testimony of another accomplice).

[¶18.] "Instructions are sufficient when, viewed as a whole, they correctly state the law and inform the jury." *State v. Corean*, 2010 S.D. 85, ¶ 38, 791 N.W.2d 44, 58. Both the law and facts of this case warranted instructions on the inadequacy of corroboration that merely showed the circumstances or commission of the offense and the corroboration of one accomplice by another. Therefore, instructional error would have been present had these instructions been requested.

[¶19.] Thomas finally contends that the circuit court erred in failing to give a cautionary instruction regarding accomplice testimony. "[A]n accomplice, . . . in law, is regarded as a corrupt source of testimony." *State v. Beene*, 257 N.W.2d 589, 592 (S.D. 1977). Therefore, an accomplice's testimony "ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses." *Crawford v. United States*, 212 U.S. 183, 204, 29 S. Ct. 260, 268, 53 L. Ed. 465 (1909). Further, it is not enough for the circuit court to only instruct that testimony of an accomplice must be corroborated. *Beene*, 257 N.W.2d at 591. "The jurors must be warned that, in effect, the accomplice may tailor the truth to his or her own self-serving mold, and that they are to weigh the testimony with that caveat in mind." *Id.* at 592. A circuit court errs in "fail[ing] upon request to give a

cautionary instruction concerning accomplice testimony whenever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice, provided the witness was not called by the defendant requesting the instruction." *Id.* at 592-93. The Broomfields were accomplices, and they were not called as witnesses by Thomas. Therefore, instructional error would have been present had Thomas's trial counsel requested a cautionary accomplice instruction.

[¶20.] Because trial counsel did not request these instructions thereby preserving these instructional errors for regular appellate review, appellate counsel raises them as plain-error and ineffective-assistance-of-counsel claims. "Where an issue has not been preserved by objection at trial, our review is limited to whether the trial court committed plain error." *State v. Bowker*, 2008 S.D. 61, ¶ 45, 754 N.W.2d 56, 69. *See* SDCL 23A-44-15 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court."). We also may consider unpreserved issues in certain cases involving claims of ineffective assistance of counsel. *See, e.g., Lee v. Solem*, 405 N.W.2d 56 (S.D. 1987) (considering unpreserved issues of counsel's failures to object to jury instructions and testimony as an ineffective-assistance claim). Because we conclude that this is one of those rare cases where an ineffective-assistance-of-counsel claim is ripe for review on direct appeal, we confine the remainder of our analysis to that claim for relief.

[¶21.] To be entitled to relief on a claim of ineffective assistance of counsel, a defendant must show that his counsel provided ineffective assistance and that he

was prejudiced as a result. *Steichen*, 2009 S.D. 4, ¶ 24, 760 N.W.2d at 392. To establish ineffective assistance, a defendant must show that counsel's representation fell below an objective standard of reasonableness. *Dillon v. Weber (Dillon II)*, 2007 S.D. 81, ¶ 7, 737 N.W.2d 420, 424. The question is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984)). "There is a strong presumption that counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances." *Steichen*, 2009 S.D. 4, ¶ 25, 760 N.W.2d at 392-93.

[¶22.]	Thomas contends that trial counsel was deficient for a number of reasons,[5] but primarily because he failed to request the accomplice instructions previously discussed. Thomas argues that his ineffective-assistance-of-counsel claim should be decided on direct appeal because his counsel's failure to request a cautionary accomplice instruction was ineffective performance as a matter of law,

---

5.	Thomas argues that trial counsel's performance was also ineffective because he failed to: object to the admissibility of the Broomfields' guilty pleas; make substantive pretrial motions, particularly a request for advance notice of "other acts" evidence; object to "other acts" evidence; object to Detective Brady's recitation of the Broomfields' and Kightlinger's statements; seek an instruction that Brady's testimony of others' statements was being offered for a limited purpose; object to Brady's vouching for truth or falsity of witness statements; and object to the prosecutor's personal opinion of Thomas's testimony.

and "there is no reason to withhold a ruling to allow counsel to come up with one that will be held to be insufficient anyway." Thomas also points out that because he will serve a short sentence if his conviction is affirmed on direct appeal, he will be out of custody too quickly to challenge his conviction in a habeas proceeding alleging ineffective assistance of counsel.

[¶23.]     Ineffective-assistance-of-counsel claims are generally not considered on direct appeal. *State v. Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d 250, 256. The reason is to allow "attorneys charged with ineffectiveness [to] explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review." *Id.* This Court will "depart from this principle only when trial counsel was 'so ineffective and counsel's representation so casual as to represent a manifest usurpation of [the defendant's] constitutional rights.'" *Id.* (quoting *State v. Dillon (Dillon I)*, 2001 S.D. 97, ¶ 28, 632 N.W.2d 37, 48 (quoting *State v. Hays*, 1999 S.D. 89, ¶ 14, 598 N.W.2d 200, 203)).

[¶24.]     There is no question that, at the very least, trial counsel should have requested a cautionary accomplice instruction. The Supreme Court has concluded that the failure to demand a cautionary accomplice instruction, together with other errors, violates due process and the defendant's right to counsel. *Cash v. Culver*, 358 U.S. 633, 637-38, 79 S. Ct. 432, 436, 3 L. Ed. 2d 557 (1959). In *Beene*, this Court mandated the instruction when requested by the defendant. 257 N.W.2d at 592-93. Therefore, trial counsel could not claim that asking for the instruction would have been futile.

[¶25.] Nor could counsel claim that he withheld a request for a cautionary instruction as part of a legitimate trial strategy. This Court has concluded that when accomplice testimony is presented, there is no conceivable strategic motive that would excuse failure to request a cautionary accomplice instruction.

> By not requesting that the jury be instructed to consider with caution the testimony of an accomplice, appellant's counsel omitted a defense which might have negated [the witness's] damning testimony. . . . [This] instruction[ ], if [it] had been requested and given, might have mitigated the effect of [the witness's] testimony, hence reducing the chances of appellant's conviction. No advantage could have been envisioned by appellant's counsel in withholding [a] request[ ] for [this] instruction.

*State v. McBride,* 296 N.W.2d 551, 556 (S.D. 1980). This Court reiterated this conclusion in *Grooms v. State,* stating: "We cannot envision an advantage which could have been gained by withholding a request for this instruction." 320 N.W.2d 149, 152 (S.D. 1982).

[¶26.] The jury's decision in this case was based almost entirely upon a credibility dispute between the Broomfields and Thomas. Further, the Broomfields' testimony was of no conceivable benefit to Thomas, and Jimmy Broomfield's trial testimony was impeached. In final argument, the State's attorney admitted that in Jimmy Broomfield's first two interviews (not implicating Thomas), Jimmy lied about what occurred but that he "came clean" in his testimony at trial. Additionally, there was admitted personal animosity between the Broomfields and Thomas. In addition to these evidentiary reasons for discrediting the Broomfields' testimony, a cautionary instruction from the court would have explicitly warned the jury to examine the Broomfields' testimony "with great care and caution." *Beene,*

257 N.W.2d at 589. The State has not identified and we cannot see any benefit gained or tactic served by not requesting a cautionary instruction.

[¶27.]    Moreover, the Broomfields were the only witnesses having direct knowledge of the events. Therefore, we can also conceive of no strategic benefit in not requesting instructions informing the jury: (1) that one Broomfield could not corroborate the other; and (2) that the remaining circumstantial evidence merely showing the circumstances and commission of the offense was not sufficient to corroborate the Broomfields. We finally note that appellate counsel has identified a number of related and unrelated motions and failures to object to evidence that have no apparent strategic benefit on this record. *See supra* note 5. Under these circumstances, there is no need to withhold a ruling until a habeas corpus proceeding. *Cf. Dillon I*, 2001 S.D. 97, ¶ 28, 632 N.W.2d at 48 (reasoning that main purpose to decline evaluation of ineffective assistance on direct appeal is so that "attorneys charged with ineffectiveness can explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review"). Thomas has established on direct appeal that trial counsel provided ineffective assistance.

[¶28.]    A defendant alleging ineffective assistance of counsel also has the burden of proving prejudice. *Dillon II*, 2007 S.D. 81, ¶ 6, 737 N.W.2d at 424. Prejudice "exists only when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* ¶ 8 (quoting *Owens v. Russell*, 2007 S.D. 3, ¶ 9, 726 N.W.2d 610, 615 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068)). "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* Ultimately, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068-69. The question then is, if we take away the Broomfields' accomplice testimony (assuming the jury discredited it after having been properly instructed), is there a reasonable probability that the jury would have had a reasonable doubt respecting Thomas's guilt?

[¶29.]        Thomas points out that we found such prejudice in the failure to give cautionary accomplice instructions in similar situations in *Grooms*, 320 N.W.2d 149; *McBride*, 296 N.W.2d 551; and *Beene*, 257 N.W.2d 589. In each of those cases, no witnesses other than the accomplices gave testimony directly tending to show the defendants' complicity. *See Grooms*, 320 N.W.2d at 151 (recognizing that the accomplice was the only individual to give testimony that directly linked defendant with the theft; "evidence presented at trial by the other six witnesses was circumstantial evidence"); *McBride*, 296 N.W.2d at 554 (noting that the accomplice was "the only individual to give testimony which linked appellant with the burglary," and "the [S]tate did not have a case without the testimony of an accomplice or a colleague in crime"); *Beene*, 257 N.W.2d at 589 ("No witness, other than [the accomplice], gave any testimony directly tending to show defendant's complicity."). We also found prejudice in *Beene* because "the jury had to credit [the accomplice's] testimony in order to convict [Beene]." 257 N.W.2d at 592. "Taken as

true, the testimony of the [other witnesses] would not [have made] a case for the jury on the charges against [Beene.]" *Id.* at 591.

[¶30.] The State contends that no prejudice has been shown because even without the Broomfields testimony, Kightlinger made a case for the jury on Thomas's guilt. Although Kightlinger's testimony makes this a closer case, it is ultimately the same as *Grooms*, *McBride*, and *Beene*. Taken at its best, Kightlinger's testimony was equivocal. In both his direct and cross-examination, Kightlinger established presence at the scene but no more. Thomas's purported admission to Kightlinger did not directly show that Thomas started the fire. Additionally, all of the State's remaining evidence was circumstantial, and even it only tended to show Thomas's presence at the scene. Finally, a conviction in this case depended upon the Broomfields' credibility. Because, absent the Broomfields' testimony, there was no evidence directly implicating Thomas in starting the fire, we conclude that Thomas has established prejudice; i.e., a reasonable probability that proper jury instructions, motions, and objections at trial may have changed the outcome. We therefore reverse and remand for new trial.

[¶31.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.