#30145-a-SRJ
**2024 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

    v.

TODD W. STEVENS,                                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE GREGORY J. STOLTENBURG
Judge

* * * *

DONALD M. MCCARTY
STACIA JACKSON of
Helsper, McCarty, & Rasmussen, P.C.
Brookings, South Dakota                          Attorneys for defendant
                                                 and appellant.


MARTY J. JACKLEY
Attorney General

STEPHEN G. GEMAR
Assistant Attorney General
Pierre, South Dakota                             Attorneys for plaintiff
                                                 and appellee.

* * * *

ARGUED
AUGUST 31, 2023
OPINION FILED **01/17/24**

#30145

JENSEN, Chief Justice

[¶1.]    After a police investigation, Todd Stevens was indicted and convicted of six drug-related counts. Ashley Burgers, Stevens' former roommate and fellow methamphetamine user, testified for the State in exchange for immunity. Stevens' trial counsel[1] did not request—and the circuit court did not give–corroboration or cautionary accomplice jury instructions for Burgers' testimony involving the distribution charges. Stevens argues that it was plain error for the circuit court to fail to give these instructions. Additionally, he argues this Court should review his claim of ineffective assistance by his trial counsel, on direct appeal, for failing to propose accomplice testimony instructions. We affirm.

**Factual and Procedural Background**

[¶2.]    Stevens resided in Brookings, South Dakota, within 1000 feet of Mickelson Middle School. In June 2021, after receiving a tip from a confidential informant, police began investigating drug activity at his residence. As part of the investigation, police conducted two traffic stops of individuals leaving Stevens' residence, during which they found methamphetamine on one driver and a methamphetamine pipe on the other driver. Police also tracked Stevens' vehicles and, on multiple occasions, placed him within blocks of the home of Ryan Gillis, a known Sioux Falls methamphetamine supplier. Police also conducted two trash pulls, finding broken methamphetamine pipes, baggies with marijuana residue, a letter from Burgers to Stevens saying she "grabbed that full you left under your mattress . . . [and was] going to go get rid of [half] of it for you[,]" a possible ledger of

---

1.    Stevens' appellate counsel did not represent him at trial.

-1-

drug transactions, and mail showing that Burgers was living at Stevens' residence. At trial, the detective investigating Stevens explained the drug terminology in Burgers' letter.

[¶3.]		On September 27, 2021, upon executing a search warrant at Stevens' residence, police found 2.16 grams of methamphetamine, a digital scale that field tested positive for methamphetamine, drug paraphernalia, and marijuana.  When Stevens, who had not been home during the search, returned to town, police conducted a traffic stop based on the still-open search warrant and found a baggie containing 2.59 grams of methamphetamine on his person.

[¶4.]		Stevens was indicted on October 8, 2021, on six counts: (1) distribution of a schedule II controlled substance in violation of SDCL 22-42-2 (methamphetamine), (2) committing the distribution offense described in count (1) in a drug-free zone in violation of SDCL 22-42-19(1),[2] (3) possession with intent to distribute a schedule II controlled substance in violation of SDCL 22-42-2 (methamphetamine), (4) maintaining a place where drugs are sold or kept in violation of SDCL 22-42-10, (5) unauthorized possession of a controlled substance in violation of SDCL 22-42-5 (methamphetamine), and (6) possession of marijuana in violation of SDCL 22-42-6.  He pleaded not guilty to each count.

---

2.	The indictment alleged the offense occurred "on or about" September 27, 2021, which was the date the search warrant was executed by law enforcement.  At trial, the State did not identify the specific dates of the distributions which occurred at Stevens' home as charged in counts (1) and (2) of the indictment.  Instead, based upon Burger's testimony and other evidence, the State argued that Stevens had distributed methamphetamine on multiple occasions during that timeframe at his home.

[¶5.]        Prior to trial, the State gave Burgers immunity from prosecution for her involvement in criminal activity during the summer of 2021 and for her August 2022 parole revocation in exchange for her cooperation. Burgers testified that she was not romantically involved with Stevens. Rather, they had an arrangement where she performed household chores at his residence and looked after him and his friends. She did not pay him to stay there, and she did not pay him for the drugs he gave her. She recounted how she, Stevens, and others frequently used methamphetamine Stevens supplied in the house. She testified that the group would typically consume an eight ball[3] of methamphetamine per night.

[¶6.]        According to Burgers, she was the only other person allowed in Stevens' bedroom, where he kept some of his methamphetamine. He kept methamphetamine in other locations as well. She testified that Stevens used a digital scale to weigh methamphetamine and named several individuals to whom he had sold methamphetamine. Burgers confirmed in her testimony that there were times when "fronting" methamphetamine was involved, meaning "you front the meth and maybe pay later[.]" On these occasions, Burgers "would write it down to help [Stevens] keep track" of outstanding drug debts.

[¶7.]        Burgers also explained the letter she had written to Stevens that police discovered during a trash pull at his residence. She testified that she wrote the letter on August 31, 2021, because she was unable to fully wake him. She left the letter to inform him that she had "grabbed that full that you left under your

---

3.      Burgers referred to "three and a half grams" of methamphetamine as an "eight ball."

mattress for [Roger Love] and I'm going to go get rid of half of it for you." She explained that a "full" referred to a full ounce of methamphetamine and that Stevens would commonly "front" methamphetamine to Love, who would sell it in Sioux Falls and pay him later. Burgers named Ryan Gillis as one of Stevens' suppliers. She testified that she accompanied Stevens on several trips to purchase methamphetamine from Gillis, often about two ounces at a time.

[¶8.] On cross-examination, Stevens' counsel highlighted Burgers' motivation to testify. In response to his questions, she confirmed that she told a detective she had relapsed and that he told her "up front that he would do whatever he could to make sure that [she] didn't get in any trouble for that[.]" She also agreed that "being incarcerated makes it difficult to care for [her] children." Stevens presented the agreement Burgers had signed prior to testifying, and Burgers explained her understanding of it: "if I testify here today that I can get, I think it's called immunity, and not get charged with the same charges." Stevens also challenged Burgers' testimony by asking about the relatively small amounts of methamphetamine she saw Stevens possess and suggested that she had introduced Stevens to Gillis.

[¶9.] A forensic chemist from the South Dakota Public Health Laboratory testified that she tested the substances police found in Stevens' home and on his person, confirming that both were methamphetamine. The chemist also weighed and provided the exact quantities of methamphetamine found in Stevens' home and on his person.

[¶10.]     The State also presented evidence that Stevens communicated with his son by text message while Stevens was incarcerated prior to trial. During one of their conversations, Stevens sent a message to his son containing the following: "[a]s much as I bougjt meth I also helped othet friends and we just paid each other back the cost. If that is considered being a distributor than iguess iand all the past friends Are deallers than but i woll say its bulls[***] to tag me or any other as a dealer when the resl ones haves pounds or more available for yhe people that are Not necessarily friends their actually customers in my mind i didnt operate that way nor did my friends." (Errors in original.)

[¶11.]     When the State rested at the end of the first day of trial, Stevens unsuccessfully moved for a judgment of acquittal, arguing without elaboration that the State did not make a prima facie case. Stevens also indicated his plan to rest when the jury reported the next day. The circuit court worked with counsel to settle the final jury instructions. Stevens did not object to the court's instructions or propose additional instructions.

[¶12.]     During closing argument, Stevens admitted he was a user of methamphetamine and marijuana and that the evidence supported his convictions on counts (4), (5), and (6) but urged the jury to find him not guilty on the remaining counts involving distribution. He argued that Burgers' testimony was not corroborated because police did not find an "owe sheet" during the execution of the search warrant, did not conduct a controlled buy, and did not directly observe distribution occurring. Stevens asserted further that the small amounts of drugs discovered on his person and in his residence were consistent with personal use, not

distribution, and that the State's evidence supported a theory that Burgers, not Stevens, was distributing methamphetamine.

[¶13.] The jury returned a guilty verdict on all counts. Stevens was sentenced to serve one year for count (1); a five-year consecutive sentence for count (2); and a ten-year consecutive sentence for count (3). The circuit court imposed a county jail sentence on each of the possession charges. Stevens appeals and raises two issues, which we restate as follows:

1. Whether the circuit court plainly erred by failing to sua sponte give corroboration and cautionary jury instructions on accomplice testimony.

2. Whether Stevens received ineffective assistance of counsel because trial counsel did not request corroboration and cautionary jury instructions on accomplice testimony.

## Analysis

### 1. *Failure to instruct on accomplice testimony*

[¶14.] The circuit court's final jury instructions contained no reference to Burgers as an accomplice and included no corroboration or cautionary instructions for evaluating Burgers' testimony. Stevens acknowledges the issue was not preserved as trial counsel failed to request accomplice instructions, but he asks this Court to review the circuit court's failure to sua sponte give accomplice instructions for plain error. "Where an issue has not been preserved by objection at trial, our review is limited to whether the trial court committed plain error." *State v. Thomas*, 2011 S.D. 15, ¶ 20, 796 N.W.2d 706, 713 (quoting *State v. Bowker*, 2008 S.D. 61, ¶ 45, 754 N.W.2d 56, 69). "Plain error requires a defendant to establish '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we

exercise our discretion to notice the error if (4) it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.""" *Id.* ¶ 14 n.3, 796 N.W.2d at 711 n.3 (alteration in original) (quoting *State v. Beck*, 2010 S.D. 52, ¶ 11, 785 N.W.2d 288, 293). The third prong of plain error places the burden on the defendant to show "a 'reasonable probability' that, but for the error, the result of the proceeding would have been different." *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 33, 785 N.W.2d 272, 283 (quoting *United States v. Rush-Richardson*, 574 F.3d 906, 911 (8th Cir. 2009)).

[¶15.]        Stevens argues that his convictions for counts (1), (2), and (3) were "obtained substantially on the uncorroborated testimony of Burgers, who is an accomplice." Stevens cites *State v. Beene* for the proposition that South Dakota requires both cautionary and corroboration instructions for accomplice testimony. 257 N.W.2d 589, 591 (S.D. 1977). *See also* SDCL 23A-22-8 (explaining that "[a] conviction cannot be had upon the testimony of an accomplice unless it is corroborated"). Stevens also relies on *Thomas* to support his view that the failure to give accomplice instructions requires reversal. 2011 S.D. 15, ¶ 18, 796 N.W.2d at 712.

[¶16.]        Stevens provides South Dakota Criminal Pattern Jury Instruction 1-14-7, which he argues is consistent with SDCL 23A-22-8 and our cases, to illustrate the instruction on corroboration he asserts the circuit court should have given:

> A person cannot be convicted of a crime upon the testimony of an accomplice unless the accomplice is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroborative evidence is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

. . .

Corroborative evidence is additional evidence to the same point and although it need not be sufficient standing alone to support a conviction, it must relate to some act or fact which is an element of the offense with which the defendant is charged. It must, in and of itself and independent of the evidence which it supports, fairly and logically tend to connect the defendant with the commission of the alleged offense. Corroborative evidence may consist of other evidence of circumstances, the testimony of a witness other than an accomplice, or the testimony or admissions, if any, of the defendant.

In determining whether an accomplice has been corroborated you must first assume the testimony of the accomplice to be removed from the case. You must then determine whether there is any remaining evidence which tends to connect the defendant with the commission of the offense. If there is none you must acquit the defendant. If there is such evidence his testimony is corroborated. But before you may convict the defendant you must find from all the evidence beyond a reasonable doubt that the defendant is guilty.

[¶17.]        He likewise references our decisions and provides South Dakota Criminal Pattern Jury Instruction 1-14-8 to illustrate the cautionary instruction he argues should have been given:

You are instructed that the testimony of an accomplice ought to be viewed with caution. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with great care and caution and in light of all the evidence in the case.

[¶18.]        Relying on *State v. Corean*, the State argues that Burgers was not an accomplice based on her level of involvement in Stevens' drug activity and that, at a minimum, the question of whether Burgers was an accomplice was a fact question and did not warrant the court giving accomplice instructions sua sponte. 2010 S.D. 85, ¶ 44, 791 N.W.2d 44, 59. The State also contends the failure to give accomplice instructions is not plain error and that Stevens cannot show prejudice.

a.  *Burgers as an accomplice*

[¶19.]  "An accomplice is one who is liable to prosecution *for the identical offense charged against the defendant on trial.*  To render one an accomplice he must in some manner knowingly and with criminal intent participate, associate or concur with another in the commission of a crime."  *State v. Busack*, 532 N.W.2d 413, 415–16 (S.D. 1995) (quoting *State v. Fox*, 313 N.W.2d 38, 40 (S.D. 1981)).  "Whether an individual is an accomplice may be a question of law for the court or a question of fact for the jury, depending on the state of the evidence."  *Corean*, 2010 S.D. 85, ¶ 43, 791 N.W.2d at 59 (quoting *Busack*, 532 N.W.2d at 415).  "If the facts as to a witness' alleged participation in the crime are disputed or susceptible to different inferences, the question is one of fact for the jury; otherwise, it is a question of law." *Id.* (quoting *Busack*, 532 N.W.2d at 415).  In *Corean*, this Court held that the circuit court did not err in instructing the jury that there were fact questions as to whether some of the witnesses were accomplices, but that others were accomplices as a matter of law.  *Id.* ¶¶ 42–44, 791 N.W.2d at 59.

[¶20.]  Here, the record does not present any disputed facts for the jury on Burgers' status as an accomplice.  While the State did not identify the specific date of the offenses charged in counts (1) and (2), by Burgers' own admission, she was an accomplice.  She was involved with Stevens in distributing methamphetamine throughout the relevant time.  Burgers admitted that she was involved in possessing, using, and assisting Stevens in distributing methamphetamine over the course of the summer of 2021.  Burgers' participation establishes that, absent the

immunity agreement, she would have been liable to prosecution for identical offenses.

[¶21.] SDCL 23A-22-8 forbids a conviction based "upon the testimony of an accomplice unless it is corroborated[.]" Moreover, in this Court's prior decisions, we have determined that it is error for a court to fail to instruct on accomplice testimony. In *Thomas*, the defendant did not request any accomplice instructions at trial. 2011 S.D. 15, ¶ 14, 796 N.W.2d at 711. The trial court, sua sponte, gave a corroboration instruction, which was challenged on appeal as inadequate. *Id.* ¶ 17, 796 N.W.2d at 712. The defendant also challenged the court's failure to give a cautionary instruction. *Id.* ¶ 19, 796 N.W.2d at 712. On direct appeal, the defendant raised claims of both plain error and ineffective assistance of counsel. *Id.* ¶ 20, 796 N.W.2d at 713. This Court did not review any error in this regard for plain error but, instead, discussed counsel's failure to request accomplice instructions in reviewing the claim for ineffective assistance of counsel. *Id.* ¶ 18, 796 N.W.2d at 712.

[¶22.] In reversing the conviction on ineffective assistance grounds, the Court foreclosed the possibility of a legitimate strategy behind failing to request the accomplice instructions. *Id.* ¶¶ 24–25, 796 N.W.2d at 714 ("[T]here is no conceivable strategic motive that would excuse failure to request a cautionary accomplice instruction."). Other decisions, both in the context of ineffective assistance of counsel and plain error, demonstrate the clarity of our law as to the necessity of requesting or giving accomplice instructions. *See State v. McBride*, 296 N.W.2d 551, 555 (S.D. 1980) ("No advantage could have been envisioned by

appellant's counsel in withholding requests for these instructions."); *Grooms v. State*, 320 N.W.2d 149, 152 (S.D. 1982) ("We cannot envision an advantage which could have been gained by withholding a request for this instruction."); *see also Smith v. Weber*, 2005 S.D. 85, ¶ 10, 701 N.W.2d 416, 419 (failure to give corroboration instruction was error but did not meet the prejudice standard required for the third prong of plain error review because the court did give a cautionary instruction and the evidence was more than sufficient to support the verdict even without the testimony).

        b.     *Plain error in failing to give a corroboration instruction*

[¶23.]      "An error is 'plain' when it is clear or obvious." *State v. McMillen*, 2019 S.D. 40, ¶ 23, 931 N.W.2d 725, 732 (citing *United States v. Roy*, 408 F.3d 484, 495 (8th Cir. 2005)). "[Plain error]'s requirement that an error be 'plain' means that lower court decisions that are questionable but not *plainly* wrong (at time of trial or at time of appeal) fall outside the Rule's scope." *Id.* (alteration in original) (quoting *Henderson v. United States*, 568 U.S. 266, 278, 133 S. Ct. 1121, 1130, 185 L. Ed. 2d 85 (2013)). "In considering whether an error is 'clear or obvious' . . . we must decide whether controlling . . . precedent has reached the issue in question, or whether the legal question would be subject to 'reasonable dispute.'" *Id.* (first omission in original) (quoting *United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015)).

[¶24.]      Given our prior decisions, we conclude that the law is well-established that a court must give a corroboration instruction when there is accomplice testimony. The failure to give a corroboration instruction is plain error, even in the absence of a request from the defendant. Nonetheless, Stevens still must show that

he was prejudiced by the lack of a corroboration instruction as to counts (1), (2), and (3). *See Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 33, 785 N.W.2d at 283.

[¶25.]    Statutorily, "[a] conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." SDCL 23A-22-8. "However, 'accomplice testimony need not be corroborated by evidence sufficient to sustain a conviction.'" *State v. Dunkelberger*, 2018 S.D. 22, ¶ 13, 909 N.W.2d 398, 400 (quoting *State v. Kihega*, 2017 S.D. 58, ¶ 11, 902 N.W.2d 517, 522). "Corroboration is sufficient if it tends to affirm the accomplice's testimony and establish the accused's guilt." *Id.* (quoting *State v. Wheeler*, 2013 S.D. 59, ¶ 9, 835 N.W.2d 871, 873). "Both circumstantial evidence and the accused's own words may provide the necessary corroboration." *Id.* (quoting *Kihega*, 2017 S.D. 58, ¶ 11, 902 N.W.2d at 522).

[¶26.]    Before considering the question of prejudice on this record, we first address Stevens' argument that *Thomas* modified our prejudice standard for whether error exists for failing to give proper accomplice instructions. He relies on a question posed in *Thomas* to support his claim that prejudice exists if the evidence was insufficient without Burgers' testimony to sustain a conviction. Specifically, Stevens relies on the query in *Thomas*, after finding error, that "if we take away the . . . accomplice testimony (assuming the jury discredited it after having been properly instructed), is there a reasonable probability that the jury would have had a reasonable doubt respecting Thomas's guilt?" 2011 S.D. 15, ¶ 28, 796 N.W.2d at

715. This rhetorical question was oriented toward the particular facts of that case, in which the appellant had been convicted of reckless burning, and the Court's concern that the State's evidence aside from accomplice testimony merely established the defendant's presence at the crime scene and did not corroborate the accomplices' testimony that the defendant had started the fire or otherwise connected him to the crime. *Id.* ¶ 30, 796 N.W.2d at 716. However, before considering the particular prejudice that existed in *Thomas*, the Court restated our long-recognized prejudice standard, which is consistent with *Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068–69, 80 L. Ed. 2d 674 (1984):

> Prejudice "exists only when 'there is a reasonable probability that, but for counsels [sic] unprofessional errors, the result of the proceeding would have been different.'" "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ultimately, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."

*Id.* ¶ 28, 796 N.W.2d at 715 (alteration in original) (internal citations omitted). Thus, contrary to Stevens' claim, *Thomas* did not create a different standard for judging prejudice under plain error review or when considering an ineffective assistance of counsel claim in cases where accomplice instructions are not requested or given.

[¶27.] Unlike *Thomas*, the other evidence presented by the State in this case connected Stevens to the distribution offenses and thoroughly corroborated Burgers' testimony. Law enforcement found methamphetamine and paraphernalia on Stevens' person and at his home. The paraphernalia included a digital scale that

law enforcement explained is commonly used to weigh illegal substances for distribution. Law enforcement also found methamphetamine and paraphernalia on two individuals immediately after they had left Stevens' home. Further, Stevens admitted in text messages to his son that he was providing methamphetamine to others, and his statements were fully consistent with the testimony given by Burgers concerning this drug activity. And yet more corroboration comes from circumstantial evidence collected during the trash pulls and search of the residence as well as the location data that showed Stevens was in the vicinity of Gillis' home in Sioux Falls multiple times during the summer of 2021. The State also presented evidence that Stevens' home was within 944 feet of a school building and within 745 feet of the school property line.

[¶28.] The pattern instruction on corroboration would have informed the jury that the "admissions, if any, of the defendant" could corroborate accomplice testimony. While Stevens' text message to his son suggests that he would distinguish himself from those dealing in larger quantities or seeking to sell controlled substances for economic gain, the law carves out no exception for those who "benevolently" distribute controlled substances or consider their customers to be friends. *See* SDCL 22-42-2. In view of the overwhelming corroborative evidence, Stevens was not prejudiced by the absence of a corroboration instruction.

> c. *Plain error in failing to give a cautionary instruction*

[¶29.] We have not specifically addressed whether the failure of a court to give a cautionary instruction sua sponte is error or plain error. In discussing the necessity of a cautionary instruction for accomplice testimony, we have stated:

> "(E)xperience has shown that the evidence of an accomplice
> should be viewed with care, caution and suspicion because it
> comes from a tainted source and is often given in the hope or
> expectation of leniency or immunity." (citations omitted). In
> addition to being derived from a suspect source accomplice
> testimony is frequently cloaked with a plausibility which may
> interfere with the jury's ability to evaluate its credibility. "'(A)n
> accomplice is not merely a witness with a possible motive to tell
> lies about an innocent accused but is such a witness peculiarly
> equipped, by reason of his inside knowledge of the crime, to
> convince the unwary that his lies are the truth.'" (Heydon, The
> Corroboration of Accomplices, 1973 Crim. L. Rev. (Eng. Ed.) 264,
> 266; *see also* Note, 54 Colum. L. Rev. 219, 234.)

*Beene*, 257 N.W.2d at 590 (alterations in original) (citation omitted).[4] However, the statements in *Beene* were made in the context of this Court's review of whether it was error for the court to reject the defendant's proposed cautionary instruction. *Id.* at 591. In *Thomas*, this Court discussed the failure of the circuit court to give a cautionary instruction and stated that "instructional error would have been present *had [the defendant] requested a cautionary accomplice instruction*[,]" but we confined our analysis of the issue to Thomas' ineffective assistance claim and did not consider whether the court plainly erred by not giving such instruction. 2011 S.D. 15, ¶ 19, 796 N.W.2d at 713 (emphasis added).

[¶30.]		This Court has only "mandated" the giving of a cautionary instruction "*when requested by the defendant.*" *Id.* ¶ 24, 796 N.W.2d at 714 (emphasis added) (citing *Beene*, 257 N.W.2d at 592–93). And unlike the corroboration instruction,

---

4.		In *Beene*, this Court rejected general credibility instructions as being sufficient in the absence of a specific accomplice testimony cautionary instruction. 257 N.W.2d at 591 (An instruction that "applied equally to all witnesses . . . had the erroneous effect of telling the jury that the credibility of an accomplice was to be determined by the same test as would be applied in determining the credibility of any other witness.").

which is rooted in the corroboration requirement of SDCL 23A-22-8, there is no statutory counterpart to the cautionary instruction that suggests a conviction should be invalidated if the concerns noted in *Beene* are not addressed by a jury instruction. The corroboration instruction informs the jury that a defendant cannot be found guilty of a crime upon the testimony of an accomplice unless the testimony is corroborated by other evidence which connects the defendant to the crime. In contrast, the cautionary instruction merely informs the jury that accomplice testimony should be viewed with greater scrutiny than ordinary witness testimony. Therefore, we cannot conclude that the circuit court's failure to give the instruction sua sponte was error, much less plain error. Moreover, given Stevens' counsel's cross-examination of Burgers concerning her motivation to testify, as well as the other substantial evidence corroborating Burgers' testimony and connecting Stevens to the crimes, there is no reasonable probability that, but for the failure to give a cautionary instruction, the result of the proceeding would have been different. Thus, Stevens has not established the prejudice prong of plain error review.

### 2.    *Ineffective assistance of counsel*

[¶31.]      On direct appeal, Stevens also requests review of his ineffective assistance of counsel claim arising from his trial counsel's failure to request accomplice instructions. However, "[t]o be entitled to relief on a claim of ineffective assistance of counsel, a defendant must show both that his counsel provided ineffective assistance and that he was prejudiced as a result." *Thomas*, 2011 S.D. ¶ 21, 796 N.W.2d at 713. We recently held that the consideration of prejudice is the same under both plain error review and an ineffective assistance of counsel claim.

"[A] review of the United States Supreme Court's treatment of the two prejudice inquiries reveals that the showing of prejudice under *Strickland* is the same as that required to establish prejudice under plain error review." *Neels v. Dooley*, 2022 S.D. 4, ¶ 15, 969 N.W.2d 729, 735. Therefore, our resolution on plain error review that there is no prejudice precludes a successful ineffective assistance of counsel claim by Stevens on this issue.

[¶32.]     Affirmed.

[¶33.]     KERN, DEVANEY, and MYREN, Justices, concur.

[¶34.]     SALTER, Justice, concurs specially and concurs in result.

SALTER, Justice (concurring specially and concurring in result).

[¶35.]     I do not believe that the absence of a corroboration instruction should be categorically regarded as error, plain or otherwise, and with respect, I write to add my views.

[¶36.]     The two-sentence entirety of SDCL 23A-22-8 provides an uncomplicated command:

> A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

[¶37.]     The statute does not say that a trial court is obligated to instruct on the corroboration requirement, and no synthesis of SDCL 23A-22-8's text can support a unilateral obligation to give such an instruction, particularly in the absence of a defendant's request. The plainly stated rule of SDCL 23A-22-8 applies whether a corroboration instruction is given or not. In either event, the statutory

-17-

rule is violated only if a defendant's conviction rests on uncorroborated accomplice testimony. But if it does not, SDCL 23A-22-8 is not implicated, regardless of whether the court provided the jury with a corroboration instruction.

[¶38.] Critically, our decision in *State v. Thomas*, 2011 S.D. 15, 796 N.W.2d 706, did not involve judicial error for failing to give a corroboration instruction; it related to ineffective assistance of counsel for failing to request one. These are very different concepts, and a finding of deficient performance by defense counsel cannot be used to support a finding of error under the first element of our plain error standard:

> Plain error review by appellate courts is used to correct only particularly egregious errors by a trial court. By comparison, the ineffective assistance inquiry . . . does not involve the correction of an error by the district court, but focuses more broadly on the duty of counsel to raise critical issues for that court's consideration.

*State v. Wilson*, 2020 S.D. 41, ¶ 28, 947 N.W.2d 131, 139 (citation omitted) (internal quotation marks omitted); *Neels v. Dooley*, 2022 S.D. 4, ¶ 14, 969 N.W.2d 729, 734.

[¶39.] The Court's opinion notes this distinction between judicial error and ineffective assistance of counsel, but it does so only in its discussion of whether it was error for the court to not give a *cautionary* instruction regarding accomplice testimony. *See* majority opinion ¶ 29. In my view, the same principle applies with equal force to the absence of the corroboration instruction—i.e., defense counsel may act unreasonably by failing to request a corroboration instruction, but a trial court does not automatically err if it does not give one in the absence of a request.

#30145

[¶40.]     Under the circumstances, it is enough that Burgers' accomplice testimony is corroborated, as the Court concludes, and Stevens' convictions do not run afoul of the rule stated in SDCL 23A-22-8.  I would affirm on that basis.